IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

William James Gregory, Jr.,  )
    Plaintiff,  )
      )
v.  )    1:15cv1427 (TSE/JFA)
      )
Charles Allen, et al.,  )
    Defendants.  )

MEMORANDUM OPINION

William James Gregory, Jr., a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights at Haynesville Correctional Center (HCC). Defendant Dr. Levin has now filed a Motion for Summary Judgment, as well as a memorandum of law and supporting exhibits.[1] Dkt. Nos. 81-89. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed two pleadings, styled Motion to Refute Defendant's Argument and Show Why Plaintiff's Facts Were Supported by Undisputed Evidence, Dkt. No. 99, and Notification, Dkt. No. 100, which will collectively be taken as his Opposition to Dr. Levin's Motion for Summary Judgment.[2] Plaintiff also filed a separate pleading styled Declaration in Support of Plaintiff's Motion for Partial Summary Judgment, which will be taken as a Motion for Partial Summary Judgment. Dkt. No. 104. Dr. Levin filed a response. Dkt. No. 106. For the reasons that follow, defendants' Motion for

---

[1] All other named defendants have been dismissed from this matter.
[2] In his opposition, plaintiff states that the Court granted summary judgment in his favor on March 30, 2017. To clarify, Warden Hamilton's Motion for Summary Judgment was granted by Order dated March 1, 2017. Dkt. No. 54. Dr. Levin's Motion to Dismiss was denied by Order dated March 6, 2017. Dkt. No. 55. By Order dated March 30, 2017, Dr. Levin was granted additional time to file a Motion for Summary Judgment. Dkt. No. 66.

Summary Judgment must be granted, and plaintiff's Motion for Partial Summary Judgment must be denied.

## I.

The following facts are undisputed. Plaintiff suffers from ulcerative colitis. Dkt. No. 22. As a result, he must use the bathroom ten to fifteen times a day. Id. Dr. Levin attended to plaintiff's health "at the start of plaintiff's medical problem," therefore he knew of the severity of plaintiff's medical condition. Dkt. No. 99 at 2-3.

Effective April 25, 2016, HCC policy was changed such that the movement of offenders during institutional count was prohibited.[3] Dkt. No. 100 at 2. Because plaintiff was unable to use the bathroom during count, which can take 30 to 45 minutes, he defecated on himself several times. Dkt. No. 99 at 4. Plaintiff discussed this issue with Dr. Levin, who did not inform the warden of plaintiff's condition and concerns. Id. In addition, on April 18, 2016, Dr. Levin told plaintiff that he "was not allowed to give a bathroom pass" allowing plaintiff to use the bathroom during count. Dkt. No. 100 at 3. Dr. Levin has never believed that it was medically necessary for plaintiff to use the bathroom during count. Levin Aff. at ¶ 55. However, if Dr. Levin had reason to believe that plaintiff had a medical necessity to use the bathroom during count that could not otherwise be addressed, he would have moved plaintiff to medical housing. Id.

Plaintiff's medical records disclose the following:

- On May 6, 2015, plaintiff entered into a contract allowing him to self-administer his medications except for his daily mesalamine enema, which plaintiff was to pick up from the pill window and use in the infirmary's private bathroom. Id. at ¶ 4, Ex. A.

---

[3] During the count procedures, prison officers ensure that all inmates are present and accounted for.

2

- On May 15, 2015, Dr. Levin discussed the benefits of plaintiff's medications for his ulcerative colitis with plaintiff, as well as recommendations regarding dietary fiber and the timing of plaintiff's exercising. Id. at ¶ 6, Ex. A.

- On June 12, 2015, plaintiff's lab work came back within normal limits and Dr. Levin continued plaintiff's medications. Id. at ¶ 7, Ex. A.

- On July 30, 2015, it was noted that plaintiff was using the mesalamine enemas 76% of the time. Id.

- On August 5, 2015, plaintiff saw a gastroenterology specialist outside the facility. The specialist recommended that plaintiff continue the mesalamine enemas and vitamin D supplement, switch the oral mesalamine he was taking, start a course of steroids, take an iron supplement, have a C. diff test performed (a test for bacteria that can cause blood in stool and diarrhea), and have a flexible sigmoidoscopy (a colonoscopy for a specific part of the colon).[4] Id. at ¶ 8, Ex. D.

- The next day, Dr. Levin prescribed plaintiff the steroids, and otherwise continued plaintiff's medications.[5] Dr. Levin also ordered a C. diff test which came back negative. Id. at ¶ 9, Ex. A.

- On August 11, 2015, Dr. Levin requested a flexible sigmoidoscopy, which was performed on September 4, 2015, outside of HCC, and during which a biopsy was taken. Id. at ¶¶ 10, 13-14, Exs. A, D.

---

[4] Plaintiff alleges that, on January 20, 2016, the same specialist told plaintiff that he had not authorized the medications plaintiff stated he was taking. Dkt. No. 100 at 9. This allegation is contradicted by the record showing that the specialist, in fact, recommended that plaintiff take those very medications.

[5] The medical notes appear to reflect that Dr. Levin switched plaintiff's oral mesalamine, as recommended by the specialist, but in his affidavit, Dr. Levin states that he "ordered the [steroid] … in addition to continuation of [plaintiff's] other medications …."

3

- On August 26, 2015, Dr. Levin "fine tuned the iron supplement" recommended by the specialist. Id. at ¶ 11, Ex. A.

- On October 26, 2015, Dr. Levin examined plaintiff regarding complaints of lower abdominal sharpness and some bleeding with diarrhea. Plaintiff presented as well-hydrated, nourished, with occasional bowel sounds with no distension and no focal abdominal tenderness, and no signs of a flare-up. Plaintiff had not missed any mesalamine enemas. Dr. Levin prescribed Imodium and hemorrhoid ointment, and ordered blood lab work. Id. at ¶ 15, Ex. A.

- On November 3, 2015, plaintiff's blood work came back within normal limits. Id. at ¶ 17, Ex. A.

- On November 10, 2015, plaintiff reported having twenty bowel movements a day, diarrhea like stool (some with blood), and less abdominal pain. Dr. Levin found plaintiff to be well hydrated, nourished, with a stable weight, normal bowel sounds, only a slight distension, and non-tender to the touch. Dr. Levin counseled plaintiff as to his diet and hydration, and changed plaintiff's oral mesalamine. Id. at ¶ 18, Ex. A.

- On November 13, 2015, Dr. Levin examined plaintiff and noted that he was not clinically dehydrated, although Dr. Levin noted that he had possible fluid loss. Dr. Levin also ordered a second C. diff test. Plaintiff's lab results from this day came back essentially normal. Id. at ¶¶ 19-20, Ex. A.

- On November 16, 2015, Dr. Levin examined plaintiff and found that plaintiff's abdomen was soft, with no masses or tenderness, and no resistance to the examination, indicating his abdomen was not sore. Dr. Levin noted that plaintiff was compliant with his medications. Plaintiff reported only occasional loose stools. Dr. Levin counseled plaintiff regarding his diet, which can affect his ulcerative colitis. Id. at ¶ 20, Ex. A.

- On November 18, 2015, the pathology report from plaintiff's September 4, 2015 procedure came back indicating that plaintiff had no cancer, no active colitis in his ascending colon, and active chronic colitis in his rectum. Dr. Levin noted that these results were reassuring. Id. at ¶ 21, Exs. A, D.

- Plaintiff's November 18, 2015, and December 16, 2015 labs results were within normal limits, except for protein and blood in plaintiff's urine due to plaintiff's high cholesterol. Id. at ¶¶ 23-24, Ex. A.

- On December 28, 2015, plaintiff complained of frequent bowel movements and Dr. Levin ordered plaintiff Imodium on an as needed basis. Id. at ¶ 25, Ex. A.

- On January 11, 2016, plaintiff asked that the Imodium be changed to a steroid. Dr. Levin prescribed plaintiff a steroid. Id. at ¶ 29, Ex. A.

- On January 19, 2016, plaintiff complained of frequent, soft, stools. Dr. Levin found plaintiff to be well hydrated and not lethargic. Plaintiff had increased bowel sounds, soft fullness with no masses in his abdomen, and a mild diffuse tenderness when palpated. Dr. Levin ordered blood work and recommended another consultation by the specialist to consider different medications. Dr. Levin ordered Imodium and Pepto-Bismol for plaintiff. Id. at ¶ 29, Ex. A.

- On January 20, 2016, plaintiff went to see the specialist for a follow up visit. Several lab tests were ordered. The specialist found that plaintiff's ulcerative colitis was not under control. The specialist again recommended switching plaintiff's oral mesalamine, as well as adding an immunosuppressive medication and tapering off the steroids. Plaintiff was scheduled to have another follow up visit in six months. Id. at ¶ 30, Ex. D.

- On January 25, 2017, Dr. Levin changed plaintiff's medicine as recommended by the specialist. Id. at ¶ 31, Ex. A.

- On January 28, 2016, the lab tests from the specialist came back within normal limits. Id. at ¶ 32, Ex. A.

- On February 18, 2016, plaintiff reported having four bowel movements during the day and four at night. Plaintiff's bowel sounds were normal and he had no bloating or tenderness. Id. at ¶ 35, Ex. A.

- On April 15, 2016, plaintiff reported having four bowel movements at night and four to five during the day. Plaintiff also stated that he had occasional blood when defecating "most of the time." Dr. Levin found plaintiff to be well hydrated, not lethargic, and with good blood pressure, no racing pulse, and no sign of heart strain, shortness of breath, or rapid breathing. Plaintiff's bowels were occasionally active with no tenderness or masses. Dr. Levin ordered blood work be done, which came back within normal limits. Id. at ¶¶ 37-38, Ex. A.

- On May 2, 2016, Dr. Levin noted that plaintiff's ulcerative colitis was "well compensated" (doing well). Id. at ¶ 38, Ex. A.

- On June 15, 2016, plaintiff reported having seven bowel movements per day and that he was using less Imodium because he believed it gave him headaches. Id. at ¶ 39, Ex. A.

- On June 20, 2016, plaintiff had a follow up appointment with the specialist. The specialist recommended that plaintiff continue on his medication, with slight changes, and that he add a steroid enema for eight weeks. The specialist also recommended that plaintiff get a hepatitis B vaccination, have an annual dermatology examination, and be allowed to use the bathroom during count. Id. at Ex. D.

- On July 27, 2017, when Dr. Levin reviewed the specialist's recommendations, he changed plaintiff's medications accordingly, including adding a steroid enema. Dr. Levin noted that the recommendation to allow plaintiff to use the bathroom during count was "initiated

6

by [plaintiff]/not consultant and contrary to security concerns in [the facility]." Dr. Levin did not believe that plaintiff had any medical need to use the bathroom during count. No medical or security staff ever informed Dr. Levin that plaintiff had problems with needing to use the bathroom during count. Id. at ¶¶ 42, 55, Ex. A.

- On September 6, 2016, plaintiff complained of blood in his stool and pain on his left side. Plaintiff also stated that he had six bowel movements per day and that his symptoms had improved. Dr. Levin found plaintiff was neither weak nor lethargic, and that his oxygenation and pulse were normal. An examination of plaintiff's abdomen revealed no problems. Dr. Levin noted that plaintiff was using his mesalamine enemas 62% of the time and his steroid enemas 72% of the time. Plaintiff's blood was drawn and the results came back as acceptable. Dr. Levin discussed the importance of using the enemas, regularly taking his medications, and complying with his dietary restrictions. Id. at ¶¶ 43-47, Ex. A.

- At some point in time, the warden of HCC asked Dr. Levin about plaintiff's request for a medical pass to use the bathroom during count. Dr. Levin stated that he did not believe that plaintiff's condition required him to have a bathroom pass and that, instead, plaintiff could use adult diapers or be considered for an alternate housing assignment of a single cell with a toilet. Id. at ¶ 49.

- On November 1, 2016, plaintiff appeared well developed and well nourished, with normal vital signs, a soft, non-tender abdomen, and increased bowel activity. Plaintiff was more compliant with his mesalamine enema, and stated that he had six bowel movements per day, with occasional blood in his stool. Dr. Levin discussed the possibility of plaintiff wearing adult diapers during count, but plaintiff was not receptive. Id. at ¶ 50, Ex. A.

- Plaintiff's lab work from December 22, 2016 came back as acceptable. Id. at ¶ 51, Ex. A.

7

- On January 23, 2017, plaintiff stated that he was having seven to eight bowel movements per day and had blood in his stool once the previous week. The next day, it was noted that plaintiff was 100% compliant with his mesalamine enemas. Id. at ¶53, Ex. A.
- On April 26, 2017, plaintiff saw the specialist. Plaintiff reported having no abdominal pain, seven bowel movements per day, and intermittent blood in his stool. Plaintiff also reported having a good appetite, with stable weight. The specialist diagnosed plaintiff with ulcerative colitis, active, moderate to severe, and recommended a series of tests which have been scheduled. Id. at ¶ 54, Ex. D.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

To prevail on a claim for deliberate indifference that rises to an Eighth Amendment violation, plaintiff must establish facts sufficient to show that a jail official was deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must establish two distinct elements to state a claim upon which relief can be granted. First, he must show a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. App'x 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, plaintiff must establish that the defendant acted with deliberate indifference to his serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, a plaintiff must demonstrate "[d]eliberate indifference ... by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (recognized in Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) as overruled on other grounds by Farmer v. Brennan,

9

511 U.S. 825 (1994)); see also Daniels v. Williams, 474 U.S. 327, 328 (1986). In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Significantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

The undisputed record establishes that Dr. Levin was not deliberately indifferent to plaintiff's ulcerative colitis. Plaintiff argues that Dr. Levin was deliberately indifferent because (i) he refused to provide plaintiff with the medications recommended by the specialist and (ii) failed to authorize plaintiff's use of the bathroom during count, as recommended by the specialist. To support these claims, plaintiff states that "at a crucial stage in plaintiff's treatment Dr. Levin was both [i]ndifferent to plaintiff's health and the longevity his decision making could have on plaintiff [sic]." Dkt. No. 99 at 2 (internal quotation marks omitted).

Plaintiff's first claim is that Dr. Levin refused to provide plaintiff with the medications recommended by the specialist, which would be "devastat[ing] ... [to] the immune system of a person with ulcer[ative] colitis." Dkt. No. 99 at 5. However, plaintiff's claim is contradicted by the record. Plaintiff's medical records reflect that Dr. Levin changed plaintiff's medications in accordance with recommendations of the specialist every time, except for perhaps one time when Dr. Levin did not initially change plaintiff's oral mesalamine after the August 5, 2015 visit to the specialist. That recommended change was made after plaintiff's January 20, 2016 visit to the specialist. Therefore, plaintiff's conclusory allegations are unsupported by the contemporaneous medical records. In addition, plaintiff provides no support for his claim that the medicine Dr. Levin prescribed caused him internal damage, as the medical records do not reflect that plaintiff suffered damage because of his medicine. Accordingly, the record does not establish that Dr. Levin was deliberately indifferent to plaintiff's ulcerative colitis by allegedly failing to prescribe the medications recommended by the specialist.

10

Plaintiff's second claim is that Dr. Levin "inflicted unnecessary and wanton pain on plaintiff when he ignored the instruction of the spe[c]ialist to issue plaintiff a restroom pass during count." Dkt. No. 99 at 5 (internal quotation marks omitted). In other words, plaintiff argues that "Dr. Levin[] chose to deviate from the highly qualified specialist['s] orders ... by refusing to inform the warden about the restroom pass ...." Dkt. No. 99 at 6 (internal quotation marks omitted). The undisputed record establishes that Dr. Levin's medical opinion regarding the medical necessity of a bathroom pass for plaintiff during count differed from the specialist's opinion, which does not rise to the level of deliberate indifference. Cox v. Dupnik, 14 F. App'x 911, 912 (9th Cir. 2001) (affirming grant of summary judgment for defendant where plaintiff "demonstrated, at most, that defendants engaged in medical malpractice or that they had a different opinion about proper medical care"); Jones v. Lockhart, 484 F.2d 1192, 1193 (8th Cir. 1973) ("[C]laims based on differences of opinion over matters of medical judgment, fail to state a federal constitutional question unless the prisoner alleges exceptional circumstances.) (citations omitted).

In sum, plaintiff may not have agreed with the treatment he was receiving or may not have been properly informed of the medications he was receiving, however, that is insufficient to establish that Dr. Levin acted so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Miltier, 896 F.2d at 851. Because Dr. Levin did not act with deliberate indifference, his Motion for Summary Judgment must be granted.[6]

As to plaintiff's Motion for Partial Summary Judgment, for the reasons stated above, the motion must be denied.

---

[6] Because the undisputed record establishes that Dr. Levin was not deliberately indifferent to plaintiff's ulcerative colitis, the issue of qualified immunity need not be addressed.

11

## IV. Pending Motions

Plaintiff filed a Request for Production of Documents, which will be construed as a Motion for Discovery. Dkt. No. 102. Plaintiff's requests are extremely broad, for example he requests "any and all documents created by H.C.C. staff members from February 2011 to date of defendant[']s response." In addition, except for some of the medical records requested, it is not obvious how plaintiff's requests would help him respond to Dr. Levin's Motion for Summary Judgment. Finally, as to his medical records, the relevant medical records have been provided to plaintiff as attachments to Dr. Levin's Motion for Summary Judgment. Accordingly, plaintiff's Motion for Discovery must be denied.

In his Opposition to Dr. Levin's Motion for Summary Judgment, plaintiff renews his request for the appointment of counsel. A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis, 28 U.S.C. § 1915(e)(1); however, the Fourth Circuit has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). It is unnecessary at this time to appoint counsel for plaintiff as he has failed to demonstrate the existence of "exceptional circumstances" that would warrant appointment of counsel. Thus, plaintiff's Motion for an Appointed Counsel will be denied.

Plaintiff also requests the scheduling of an evidentiary hearing. Because the facts and legal contentions with respect to the motions for summary judgment addressed here are adequately set forth in the existing record, oral argument is unnecessary and would not aid the decisional process. Thus, plaintiff's request for an evidentiary hearing will be denied.

Finally, plaintiff appears to be moving for a default judgment in his favor, stating that, because Dr. Levin "failed to submit a Motion and/or order to dismiss[,] this court has no motion to grant ...." Dkt. No. 99 at 10. Plaintiff requests that this matter "be heard, based solely on the

12

plaintiff's pleadings, and should therefore be granted." Dr. Levin has complied with the timing of the orders entered in this matter. Therefore, default judgment is not appropriate.

## V. Conclusion

For the reasons stated above, Dr. Levin's Motion Summary Judgment must be granted and Plaintiff's Motion for Partial Summary Judgment, Motion for Discovery, Motion to Appoint Counsel, Request for Evidentiary Hearing, and Motion for Default Judgment must be denied. This civil action will be closed. An appropriate Order shall issue.

Entered this 25th day of September 2017.

Alexandria, Virginia

/s/ T. S. Ellis, III
United States District Judge